REMINGTON & PERKINS *vs.* SAMUEL W. PECKHAM.

Masters in chancery, who are empowered by chap. 203, § 29, of the General Statutes, to take depositions in perpetual memory, cannot, like magistrates empowered to take ordinary depositions, compel witnesses to appear and testify before them in such depositions by attachment for contempt; the provision in § 30 of said chapter, that the same formalities shall be observed in the taking of depositions in perpetual memory as of other depositions, referring only to the manner of taking and giving the same.

PETITION for a writ of mandamus.

The petition prayed that a writ of mandamus might be issued to Samuel W. Peckham, Esq., one of the standing masters in chancery of this court, commanding him to issue writs of attachment against certain witnesses, namely, James O. Swan and William S. Briggs, to compel their attendance before him, the said master, for the purpose of giving testimony in perpetual memory, to be used as evidence in any court in this state, in any civil suit or action wherein the petitioners, or either of them, were or might be interested, on the one part; and George H. Slade and others, owners of the Phenix Building, so called, situate on the northerly side of Westminster Street, in the city of Providence, Potter, Denison & Co., tenants and occupiers of part of said building, and twenty-five fire insurance companies, particularly named in the petition, or any or either of them, were or might

be interested, on the other part. The petition further prayed that the master might be commanded to require the witness Swan, who, after being duly summoned, appeared before the master and was partially examined, to answer certain interrogatories propounded to him in the course of his examination, and to which he demurred.

A certified copy from the master of a citation issued by him, at the request of the petitioners, for the taking of the depositions of said Swan and Briggs and several other witnesses, in perpetual memory, as before mentioned, with the returns of service thereon, was filed with the petition, by which it appeared that the said owners of said Phenix Building, the said Potter, Denison & Co., the said fire insurance companies, and the said witnesses, were duly notified of the time and place appointed by the master for the taking of said depositions, and that said witnesses were notified that they were required then and there to attend and give testimony of what they knew " relative to the fire which occurred in the Phenix Building, so called, situate, &c., on the twenty-eighth day of June, A. D. 1873, and the loss, damage, or injury to said Phenix Building, and the goods, chattels, matters and things then being in and about the same, which was occasioned by said fire, or the water used for, in, or about the extinguishment thereof, or otherwise." It also appeared by the return of the officer charged with the service of the citation, that the lawful fees were paid to the witnesses for their travel from their places of abode to the place at which they were summoned to attend, and for one day's attendance.

A certified copy from the master of the deposition of said Swan, as far as taken, with the notes of the master of the reasons assigned for the refusal of said Swan to answer the interrogatories demurred to by him, and of the course thereupon pursued by the master, the counsel for the petitioners, and the counsel for the said insurance companies, was also filed with the petition. This exhibit also contained a note by the master that the witness Swan left the master's office refusing to complete his deposition; and that the witness Briggs, who had been summoned, and was in attendance at the master's office, left the same in such manner as to amount to a refusal to give his testimony as required.

The master, by his answer, submitted the question to the

court, whether he had authority to issue the writs of attachment prayed for in the petition.

*Markland*, for the petitioners, contended that a master in chancery had power to compel witnesses, by summons and attachment, to appear before him and give their depositions in perpetual memory, citing Gen. Stat. chap. 203, §§ 16–31; *In re Jenckes et al.* 6 R. I. 18. That to said chap. 203, being a strictly remedial act, should be applied the rule of construction, that remedial statutes are to receive an equitable interpretation, by which the letter of the act is sometimes restrained and sometimes enlarged, so as more effectually to meet the beneficial end in view and prevent a failure of the remedy; and also the other equally familiar rule, that when the words of a statute are not explicit, the intention is to be collected from the context, from the occasion and necessity of the law, from the mischief felt, and the objects and remedy in view; and the intention is to be taken or presumed, according to what is consonant to reason and good discretion. 1 Kent's Com. *462, *465.

That in all cases where a power is given by statute, everything necessary to the making of it effectual, or requisite to attain the end, is implied. 12 Co. 131; *Foliamb's case*, 5 Co. 115 b; *Miller* v. *Knox*, 4 Bing. N. C. 574; 6 Scott, 1; *Overseers of Pittstown* v. *Overseers of Plattsburg*, 18 Johns. 407; *Field* v. *The People*, 2 Scam. 79; *Witherspoon* v. *Dunlap*, 1 McCord, 546; *United States* v. *Hill*, 1 Brock. 156; *Heard* v. *Pearce*, 8 Cush. 338; 1 Kent's Com. *464.

*Hart*, for the respondent, *contra*, cited Gen. Stat. chap. 203, and *In re Jenckes et al.* 6 R. I. 18.

Durfee, J. We do not think the power is expressly given to a justice of the Supreme Court or to a master in chancery, who is engaged in taking depositions in perpetual memory, to compel witnesses to appear and testify by process of contempt. The provision of the statute which is referred to as expressly conferring the power is Gen. Stat. ch. 203, § 30. That section declares that " the same formalities shall be observed in the taking of depositions in perpetual memory as in the taking of other depositions ; " and, inasmuch as there is express provision in regard to the taking of other depositions, to the effect that any person may be compelled to appear and depose in the same manner as to

appear and testify in court, it is contended that the same power is likewise given, to be exercised in the taking of depositions in perpetual memory, by force of the words : " The same formalities," &c., above recited. The argument would be valid if a formality to be observed and a power to be exercised were the same thing. They are distinct things. A power is an ability to do ; a formality is a set form or manner of doing. The formalities indicated by section 30 are simply the directions contained in previous sections respecting the manner in which the magistrate shall proceed in taking, and the deponents in giving, other depositions.

Can the power be implied ? The fact that it exists by express grant in the taking of other depositions is an argument against its existence by implication in the taking of depositions in perpetual memory ; for there is no reason why it should be expressly given in the one case and be left to implication in the other, if in both cases it was intended that it should exist. It is true, as a general rule, that a power which is expressly granted carries with it by implication all the incidental powers which are necessary to render it effectual. The rule, however, is not to be enforced without due regard to other legal rules and principles. It is going very far to hold that a power to take a deposition carries with it by implication a power to fine or imprison for contempt. Such a power is a power to punish. Its exercise is the exercise of a high judicial function ; and at common law in England seems to be confined to the houses of parliament and to courts of record. *Beecher's case,* 8 Co. 115, 120 ; *Groenvelt* v. *Burwell,* 1 Salk. 200 ; *S. C.* 12 Mod. 386 ; *Rex* v. *Clement,* 4 B. & Ald. 218 ; *Ex parte Pater,* 5 B. & S. 299. In England, it still appears to be an open question whether a justice of the peace, except when sitting in quarter sessions, has the power ; *King* v. *James,* 5 B. & Ald. 894 ; *Cropper* v. *Horton,* 8 D. & Ry. 166 ; though there are dicta to the effect that he may punish a contempt committed in his presence. *Rex* v. *Revel,* 1 Stra. 421 ; and see *Rex* v. *Rogers,* 7 Mod. 28 ; *Bennett* v. *Watson,* 3 M. & S. 1 ; *Petit* v. *Addington,* Peake, 62 ; *Mayhew* v. *Locke,* 7 Taunt. 63 ; *Griesly's case,* 8 Co. 78. In this country the power is conceded to a justice of the peace in Vermont, a justice's court in that state being regarded as a court of record ; *In re Cooper,* 32 Vt. 254 ; and

for contempt done in the face of the court in South Carolina. *State* v. *Applegate*, 2 McCord, 110; *Lining* v. *Bentham*, 2 Bay, 1; *State* v. *Johnson*, Ib. 285. On the other hand, in Pennsylvania, it has been held that a justice of the peace does not have the power, where it is not expressly given. *Brooker* v. *The Commonwealth*, 12 S. & R. 175; *Fitler* v. *Probasco*, 2 Browne, 137. In Michigan, it has been held that a magistrate, having jurisdiction simply to examine and commit or hold to bail for trial, has no power to commit a witness for refusing to testify. *In re Farnham*, 8 Mich. 89. In New Jersey, it has been held that the recorder of the city of Hoboken has no power to commit a person for contempt for using insulting language to him while sitting as a magistrate to try violations of a city ordinance. *In re Peter Kerrigan*, 33 N. J. L. 344. In New York, it has been held that a judge out of court has no power to punish, as for a contempt, a disobedience to an order made by him, in a statutory proceeding before him, unless authority so to punish is expressly conferred. And so also it has been held that a commissioner to take depositions, to be used in a circuit court of the United States, has no power to bring a person, who has been committed to jail by authority of the United States, before him by writ of *habeas corpus ad testificandum*, for the purpose of taking his deposition. *Ex parte Barnes*, 1 Sprague, 133; and see *Burnham* v. *Stevens*, 33 N. H. 247.

This reference to the decided cases exhibits a peculiar, if not excessive caution on the part of many of the courts in regard to the concession of the jurisdiction. "The power is great," say the Supreme Court of New Jersey, "and its exercise without review, where there is jurisdiction, and hence our duty to be careful not to extend it beyond the recognized bounds of the common law." 33 N. J. L. 346. In the case at bar we are asked to recognize the existence of the power on the part of an officer, who, if he has any judicial function, has such function to but a very limited extent. In *Carpenter* v. *Dawes*, 10 Ind. 125, it was held that an officer taking a deposition is not a court and cannot decide legal questions; but that it is his duty simply to take down the testimony, leaving it for the court for which it is taken to pass upon all objections to its admissibility. But to hold that such an officer has jurisdiction to punish for contempt is to hold

that, to the extent of that jurisdiction at least, he is a court. In many states the jurisdiction has been expressly conferred ; but we do not find that it has been held in any state to exist by implication. The fact that it has been expressly given indicates the prevalence of a doubt, at least, whether, if not expressly given, it would exist.

But, it will be said, if the magistrate cannot punish for contempt, he is at the mercy of the deponent, and can only take the deposition in case the deponent is willing to give it. This is an evil which is more likely to be seriously felt in the case of other depositions than in the case of depositions in perpetual memory ; and in the case of other depositions the legislature has supplied the appropriate remedy. The proper purpose of taking depositions in perpetual memory is the preservation of valuable testimony against a contingency which may or may not happen. A witness who has the power to give *such* testimony will not often refuse to give it out of mere wantonness or ill-will. The power, however, to take depositions in perpetual memory may be diverted from its legitimate purpose of preservation to a purpose of discovery, and, under the latitude which is necessarily incident to the proceeding, may be applied to the pursuit of inquisitorial investigations. The legislature perhaps did not overlook its liability to such an abuse ; and may, for that reason, have left it in the power of the deponent to protect himself by refusing to testify, — regarding the danger which would thus be incurred as small in comparison with the danger which would be avoided. In view of the law as we find it declared in the cases which have been decided, and in view of the legislation of other states as well as of our own, we have come to the conclusion that a magistrate taking depositions in perpetual memory has not by implication the ancillary power to fine or imprison a recusant witness for contempt. We have reached this conclusion not without some hesitation, but, at the same time, with a clear conviction that if the power is to exist, it is far better that it should exist by express grant, with proper safeguards against its abuse, than that it should exist by implication and without them.

*The petition for a writ of mandamus is denied.*